## CARTER & SON, INC. v. DEPARTMENT OF REVENUE

Thomas K. Thorpe, Portland, represented plaintiff.

Donald C. Seymour, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered January 9, 1974.

CARLISLE B. ROBERTS, Judge.

Plaintiff appeals from the defendant's Order No. CT 73-3, issued pursuant to the Cigarette Tax Act, ORS ch 323, imposing cigarette taxes in the sum of $24,939, plus a penalty of $2,493.90.

At the trial, witnesses were called and examined by the plaintiff and cross-examined by the defendant, but defendant produced no witnesses of its own.

The court makes the following findings of fact:

(1) The plaintiff, Carter & Son, Inc., is an Oregon corporation licensed as a cigarette distributor under

ORS 323.105. Mr. Ralph Hale is its majority shareholder and managing officer.

(2) Prior to August 30, 1973, plaintiff entered into a contract to sell 469 cases of cigarettes to Mr. Robert Satiacum, of Puyallup, Washington, an enrolled member of the Puyallup Indian Tribe, who is engaged in the business of selling cigarettes at retail on the Puyallup Indian Reservation in the State of Washington.

(3) On August 30, 1973, at the plaintiff's place of business in John Day, Oregon, 469 cases of cigarettes were loaded in a truck and trailer owned by Vogt Transfer & Storage Co., Ontario, Oregon, a common carrier licensed by the Interstate Commerce Commission to carry cigarettes in interstate commerce.

(4) Vogt Transfer & Storage Co., through its agent, "Roy" [Roy Hood], the driver of truck No. 52 and trailer No. 61, issued its "combination transportation receipt and freight bill" on August 30, 1973, for 469 cases of cigarettes, to be shipped, freight costs collect, to Bob Satiacum, Rancho Truck Stop, Boise, Idaho, as consignee, the shipment being made by Carter & Son, Inc., under authority of Ralph Hale. (The freight bill evidences on its face that it was paid on August 31, 1973, to Vogt Transfer & Storage Co., payment being received by G. L. Vogt, the testimony showing her to be the wife of the owner of Vogt Transfer & Storage Co.) The routing of the cigarettes was required by Mr. Satiacum.

(5) The truck and trailer of Vogt Transfer & Storage Co. carried the cigarettes to Ontario, Oregon, the operational headquarters of the carrier, and the loaded vehicles were parked in the yard of the carrier's place

of business late in the afternoon of August 30, 1973, for the convenience of the carrier.

(6) In the early afternoon of August 31, 1973, Mr. Clarence Vogt, the owner of Vogt Transfer & Storage Co., drove from Ontario, Oregon, to Boise, Idaho, on business not connected with the present suit and, having completed his business, drove to Rancho Truck Stop for the purpose of helping unload truck No. 52 and trailer No. 61, his testimony indicating his knowledge that more labor could be utilized and a faster turnaround of needed equipment would thus be made. At the truck stop he found the consignee, Mr. Robert Satiacum, who stated that he had not been able to obtain vehicles to carry the cargo to its ultimate destination in the Puyallup Indian Reservation. After some discussion, it was concluded by Satiacum and Vogt that rental vehicles could more readily be obtained in Ontario than in Boise and the consignee ordered the carrier to return the cigarettes (which were presumably en route from Ontario to Boise) to Ontario.

(7) Thereupon, Mr. Clarence Vogt prepared a new combination transportation receipt and freight bill, showing Bob Satiacum as both consignor and consignee of 469 cases of cigarettes, to be transported from Boise to Ontario, Oregon, in truck No. 52, trailer No. 61, the freight charges to be prepaid by the consignor-consignee. After the execution of this freight bill, Mr. Vogt drove to Ontario, intending to stop the shipment on its way to Boise and to return it to Ontario. However, he found that the shipment was in the Vogt Transfer yard in Ontario.

(8) Late in the evening of August 31, 1973, Mr. Clarence Vogt, at his home in Ontario, was joined by Mr. Hale (whose undisputed testimony indicated his

presence in Ontario was not connected with the cigarette shipment) and, sometime later, by Mr. Satiacum, after which there was a discussion of the further movement of the cigarettes. Mr. Hale agreed to rent to Mr. Satiacum the former's Flexibus, Oregon license No. H907479 which, with the chassis-mounted camper, Washington license No. BTP 619, driven by Mr. Satiacum, would accommodate the 469 cases of cigarettes. Thereafter, late in the evening of August 31 and early in the morning of September 1, the cases of cigarettes were transferred from the Vogt Transfer carriers to the two private vehicles, the work being done by Mr. Satiacum, Clarence Vogt's son Alan, and Mr. Hale. The two private vehicles, driven by Mr. and Mrs. Robert Satiacum and Mr. Hale, thereupon set out for the Puyallup Indian Reservation via John Day and Portland, Oregon. On September 2, 1973, at 5:45 p.m., the two vehicles and the 469 cases of cigarettes were seized by Washington tax authorities in Vancouver, Washington.

(9) At no time did the cigarettes bear the tax indicia of the State of Oregon or of the State of Washington.

(10) On two or more occasions, prior to August 30, 1973, Mr. Hale had sold cigarettes to Mr. Robert Satiacum, for delivery in the State of Washington, carried from the distributor's warehouse in John Day, Oregon, by Vogt Transfer & Storage Co., of Ontario, Oregon.

(11) Mr. Robert Satiacum purchased the cigarettes from the plaintiff for shipment to the Puyallup Indian Reservation to be sold to the ultimate consumers.

A portion of the pertinent law, ORS 323.030, imposes upon the distributor the duty to "pay a tax upon his distribution of cigarettes." "Distribution" is

defined in ORS 323.015. This section includes the following:

"(1) 'Distribution' includes:

"(a) The sale in this state of untaxed cigarettes."

A rule promulgated by the defendant on January 5, 1973, provides as follows:

OAR 150-323.055.

*"Exemption of Cigarette Sales in Interstate or Foreign Commerce.* The tax does not apply to sales of cigarettes which are:

"(a) Shipped to a point outside this state, pursuant to a contract of sale, by delivery by the seller to such out-of-state point by means of:

"(1) The United States mail; or

"(2) A common carrier licensed by the Interstate Commerce Commission.

"Oregon distributors claiming exemption from the tax on cigarettes on the ground that shipments or deliveries were made in interstate commerce shall certify under penalties for false swearing as contained in ORS 305.990 (5): (a) The name and address of the persons receiving such shipments or deliveries in such foreign states; and (b) that the Oregon distributors are in possession of delivery data of the following description:

"(i) A waybill, bill of lading or other evidence of shipment issued by a common carrier in the case of shipments by common carrier; or

"(ii) an insurance receipt or registry receipt issued by the United States Postal Department, or a Post Office Department receipt form 3817 in the case of shipments made by U.S. mail.

"The Department reserves the right to require such additional proof as it deems necessary in any particular case.

"(b) Shipped to a point outside this state, pur-

suant to a contract of sale, by delivery by the seller to such out-of-state destination by facilities operated by the seller if (1) the cigarettes, prior to shipment, bear the tax indicia of the receiving state indicating that the cigarettes are fully tax paid in the receiving state, and (2) a copy of the seller's invoice covering the sale, showing delivery by the seller or his agent at a designated out-of-state address, and signed by the purchaser or his agent, are furnished to the Department upon request.

"* * * * *

"Reports of such exempt sales must be maintained as provided in OAR 150-323.340-(A). The tax applies to the transaction if the cigarettes are diverted in transit or for any other reason are not actually delivered outside the state pursuant to the contract of sale or are not shipped abroad to a foreign purchaser, regardless of documentary evidence held by the distributor.

"Cigarettes are not considered to be interstate commerce and therefore are not exempt under ORS 323.040 if they are received by a purchaser or his agent (other than a common carrier) in this state.

"Failure to keep any reports, waybills, bills of lading or other documents required by this rule is justification for the Department of Revenue to impose a tax on any cigarettes claimed to be shipped out of Oregon and exempt under this rule. Any tax imposed on these grounds shall be cancelled upon actual proof to the Department that the reports, waybills, bills of lading or other documents were in fact issued and the cigarettes were in fact shipped out of Oregon and were exempt under this rule."

It is the defendant's contention that the tax must be paid by the distributor because the sale was consummated in Oregon, the consignee took title to the cigarettes before shipment, and the shipment was not actually carried out of Oregon and delivered to the retailer at an out-of-state point by means of the United

States mail or a common carrier licensed by the Interstate Commerce Commission. Defendant recognizes that the cigarettes were actually carried to the State of Washington and has not disputed that the shipment was received by the consignee with the intention of sale by him to ultimate consumers in Washington.

The plaintiff must prevail for the following reasons: (1) ORS ch 323 was not intended to impose a tax on cigarettes sold by an Oregon distributor, to be shipped out of the state and sold out of the state to ultimate consumers for use out of the state.

The legislative intent in this respect is clearly shown by the statute and is recognized by the defendant in its duly promulgated rules. ORS 323.055 (1) provides that the tax imposed by ORS ch 323 does not apply to those who "by virtue of the constitution or statutes of the United States cannot be made the subject of taxation by this state." ORS 323.085 (2) provides that "[a]ll taxes paid pursuant to the provisions of this chapter shall be presumed to be direct taxes on the retail consumer precollected for the purpose of convenience and facility only." Of course, the State of Oregon has no power (and no intention) to impose a sales or use tax upon a Washington resident who purchases cigarettes in that state for use therein. This conclusion must be assumed as implicit in the statute in any event, but confirmation is found in ORS 323.040 and 323.355, providing for the taxation of cigarettes sold by common carriers, where such tax imposition is specifically limited to "sales in Oregon." Again, in ORS 323.320, with respect to refunds or credits on account of damaged cigarettes, the section includes the words "and the department has proof of the cigarettes not being used for smoking in the State of Oregon." The

department's rule, OAR 150-323.055, provides for exemption of cigarette sales in interstate or foreign commerce.

(2) In the present case, the facts are uncontradicted that the Oregon distributor sold cigarettes to a Washington retailer to be sold to ultimate consumers in Washington and consigned the cigarettes to the purchaser in a state other than Oregon (Idaho), to be carried there by a common carrier licensed by the Interstate Commerce Commission to carry cigarettes, with an ultimate destination in the State of Washington and, in fact, the shipment was eventually carried to Washington. The rebuttable presumption that an Oregon sale ultimately was made by the distributor is overcome by the facts.

(3) Title to the property passed from the distributor to the purchaser, Mr. Robert Satiacum, at John Day and, after the cigarettes were placed in the hands of a common carrier, licensed and authorized by the Interstate Commerce Commission to carry cigarettes, plaintiff had no further authority over the shipment.

(4) No new duties or obligations under ORS ch 323 were incurred by the plaintiff in consequence of its officer, Mr. Hale, assisting in the work of unloading the cigarettes in Ontario and loading them on private carriers. Mr. Hale had no control over Mr. Satiacum's actions and he continued in the reasonable belief (which proved to be correct) that the cigarettes were still destined for the use of consumers in the State of Washington. He actually participated in necessary steps for achieving that goal by renting a vehicle and aiding in the loading thereof.

(5) There is no doubt that the distributor assumed the risk of bad faith on the part of Robert

Satiacum when it made possible any misuse of the unstamped packages of cigarettes in the hands of the consignee. If the cigarettes had not been carried out of state to be sold to ultimate consumers in Washington, plaintiff would be liable for the taxes claimed by defendant, pursuant to ORS 323.015 (1) (a), 323.030 and 323.075.

Assuming as the distributor did (through its agent and officer, Mr. Hale) that the cigarettes were destined for sale by the consignee-retailer in the State of Washington for consumption in that state, it continued subject to ORS 323.075. This section requires, upon a distribution, if the purchaser is not then obligated to pay the tax (in reliance on the shipment out of the state), and, at a subsequent time, the purchaser becomes obligated for any reason, the distributor must collect the tax for the defendant. The plaintiff relied upon Mr. Satiacum on the basis of a course of regular dealing and ORS 323.075 never became applicable to this shipment inasmuch as the facts show that the cigarettes were actually transported to Washington.

The provisions of OAR 150-323.055 appear to have been met under these facts, including the two paragraphs next to the last therein, when read and interpreted in the light of legislative intent.

Defendant has argued that, under the facts of this suit, this conclusion opens the door to abuse of the act and a potential loss of revenue. The court suggests that the risk taken by the distributor need not be shared by the administrator if the latter makes use of the powers given to it by the legislature to require a licensee or an applicant for a license as distributor to deposit with it such security as the department may

determine, as provided by ORS 323.110 and 323.120. The testimony indicates that this safeguard has not been utilized by the defendant.

Defendant has made no showing of threat to the cigarette tax revenues under the facts of this case which would justify the exercise of the state police power illustrated in *Ruppert v. Caffey,* 251 US 264, 40 S Ct 141, 64 L Ed 260 (1920). The principle of *Sellner Mfg. Co., Inc. v. Commissioner,* 202 NW2d 886, CCH STC Rep ¶ 250-137 (Minn S Ct 1972) is apropos. See also *Deluxe Check Printers, Inc. v. Commissioner,* 203 NW2d 341, CCH STC Rep ¶ 250-139 (Minn S Ct 1972).

The provisions of OAR 150-323.055 do not require the rigidity of construction in an Oregon cigarette tax case (where the administrator is dealing with a relatively small number of licensed distributors, all of whom can be subjected to security provisions) as might be necessary in a general sales tax case, involving thousands of wholesalers and retailers.

Any question of the propriety of Mr. Satiacum's act in changing the routing of his consignment is not before the court.

(6) It follows that defendant's administrative rule, OAR 150-323.055, has not been breached under the facts in this particular case, inasmuch as the distributor met its requirements. No showing has been made that the acts of the consignee were the acts of the distributor. Questions have been suggested to the court, stemming from Robert Satiacum's position vis-a-vis the State of Washington with regard to the sale of cigarettes on the Indian reservation, but this is a matter between the State of Washington and Mr. Satiacum which, ac-

cording to the testimony, is unresolved① and is presently being adjudicated. It has no place in the present suit.

Defendant's Order No. CT 73-3, dated October 8, 1973, is set aside as void, being outside the powers of the Department of Revenue, and the court's Order to Stay Proceedings to Collect Tax, issued October 31, 1973, is made permanent.

Plaintiff's argument that ORS 323.385 fails to comply with the constitutional requirements of due process is without merit. *Phillips v. Commissioner,* 283 US 589, 51 S Ct 608, 75 L Ed 1289, 2 USTC 2758, ¶ 743, 9 AFTR 1467 (1931).

---

① Cf. *Mahoney et al. v. Idaho State Tax Comm.,* CCH STC Rep ¶ 250-205 (Idaho Sept. 5, 1973), cert den — US ——, 95 S Ct 679, 42 L Ed2d 681 (1974).